IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICIA WYNN-MASON        :        CIVIL ACTION
       :        NO. 09-1235
       v.        :
       :
LEVAS COMMUNICATIONS, LLC        :

O'NEILL, J.                                         APRIL 28, 2010

## MEMORANDUM

In this action, plaintiff alleges that defendant, her former employer, discriminated against her on the basis of her gender. Presently before me are defendant's motion for summary judgment, plaintiff's response and defendant's reply. For the following reasons, I will grant plaintiff's motion.

## BACKGROUND

Defendant is the owner and operator of WURD radio, a Philadelphia radio station. Plaintiff was employed as an account executive by WURD from May 7, 2007 until her resignation on October 22, 2007. She was hired by Cody Anderson, who was the general manager of WURD at that time, to sell advertising time for the station.

At the outset, she was paid an annual salary of $36,000 plus a ten percent commission on any advertising revenue that she was able to secure. In July 2007, Kernie Anderson[1] replaced Cody Anderson as the general manager of WURD. On October 9, 2007, Anderson changed plaintiff's compensation structure to commission only, meaning that she would no longer receive a salary. He testified that he did so because plaintiff's compensation was much greater than the

---

[1]      For the purposes of this opinion, I will refer to Kernie Anderson as "Anderson" and I will refer to Cody Anderson by his full name.

compensation of the other salespeople yet she "was performing extremely poorly." K. Anderson Dep. 7:21-24 (Nov. 18, 2010). Anderson had set plaintiff's monthly sales goal at $22,000. Id. at 13:11-14. In setting this benchmark, Anderson took into consideration the fact that plaintiff had been given an account that generated between $8,000 and $10,000 monthly. Id. at 10:4-11. He expected her to sell enough advertising every month to cover the difference. Id. at 13:11-14. She was unable to do so. Id. at 25:20 - 26:6 (describing plaintiff's monthly sales numbers as "dire"). Plaintiff asserted that her low sales figures were due to the fact that she was "build[ing] relationships" and thus had "accounts that were in the making." Pl. Dep. 25:19-24 (Nov. 17, 2010).

Anderson also expected sales executives like plaintiff to attend a morning sales meeting on Monday, Wednesday and Friday of each week. K. Anderson Dep. 15:9-18. Sales executives were allowed to miss the meetings, however, if they had a meeting with a prospective client that could not be scheduled for any other time. Id. at 31:6-14. Anderson testified that plaintiff did not attend the sales meetings on a regular basis. Id. at 32:15-16. When she did attend, she often discussed her attempts to sell advertising time to large out-of-town clients. Id. at 18:19-21. Anderson, who was skeptical that her attempts to attract large clients to advertise on a small radio station like WURD would be successful, admitted that he may have told plaintiff in the course of the meetings "that's not going to happen because the agency . . . only deals with [the station's representatives who represent it on the national level]." Id. at 19:9-12. Anderson described plaintiff's insistence on pursuing national clients as "unbelievable and irritating," id. at 20:3-4, and testified that he had at least "one or two" personal meetings with her to discuss her performance. Id. at 33:15-21. He testified that her compensation structure was changed as a

result of her poor sales, her routine absence at the sales meetings and her unwillingness to shift her focus from large national clients to smaller local clients in accord with Anderson's stated goals.

Plaintiff recounts the events leading up to her resignation differently. She testified that she was recruited and hired by former general manager Cody Anderson to focus on selling advertising time to large national clients. Pl. Dep. 56:2-3. She testified that when Kernie Anderson took over as general manager, he did not schedule sales meetings for Monday, Wednesday and Friday of each week. Id. at 15:4-7. Instead, with occasional exceptions, Anderson held only one sales meeting per week. Id. at 15:1-3. Plaintiff testified that she missed several sales meetings on account of conflicting client appointments but emphasized that she always left a voicemail with Anderson explaining her absence. Id. at 39:20-24. According to plaintiff, Anderson often claimed not to have received such voicemails. Id. at 39:24 - 40:1. She also testified that Anderson never told her that her absence at these meetings was a problem. Id. at 41:11-13 ("Q. And he never told you that he thought you were missing too many sales meetings? A. No, he didn't."); Id. at 41:7-10 ("Q. Didn't he tell you how important it was to have sales meetings? A. He did not. He said it was important to get clients.").

Plaintiff also testified that Anderson acted disrespectfully to her. For example, in one of the last sales meetings that she attended, Anderson asked each salesperson in attendance to describe what he or she was working on. Id. at 46:1-3. When he reached plaintiff, she mentioned that she "was working on Loews Hotel" and Anderson responded "it's not going to happen." Id. at 46:3-7. Flustered, plaintiff began discussing the next account she had been working on. Id. at 46:7-13. Before she could continue Anderson cut her off, again saying "it's

3

not going to happen." Id. at 46:15-16.  At another sales meeting, Anderson asked everyone in the room except plaintiff what he or she was working on.  Id. at 47:11-14.  When plaintiff interjected that she had not shared what she was working on, Anderson ignored her and kept on talking. Id. at 47:16-17.  On another occasion, Anderson read plaintiff's sales numbers out loud and criticized them in front of the whole group.  Id. at 52:3-5.  She testified that she endured this sort of behavior at every sales meeting, id. at 47:2-4 ("There was not one sales meeting where [Anderson] did not harass me in some capacity."), and that Anderson never criticized anyone else.  Id. at 48:14-16.

Plaintiff testified that when she learned that her compensation structure had been changed to commission only, she was pleased.  Id. at 64:5 ("I preferred 100 percent commission.").  When she pressed Anderson for the details of her compensation package, however, he refused to answer, saying "[j]ust leave.  I'll let you know.  I'll let you know."  Id. at 64:17-18.  Plaintiff believed, based on her experience in the industry, that she was entitled to twenty percent commission and benefits.  Id. at 64:20 - 65:9.  She received notice via a letter sent by Anderson that her commission would be ten percent and she would not be entitled to benefits.  Id. at 65:19-22.  When she questioned Anderson about what she considered to be inadequate compensation, he responded "that's what it is and if you don't like it, you can quit."  Id. at 65:20-22.  The day after receiving the change in compensation, plaintiff was in a co-worker's office when Anderson entered and became "enraged when he saw [plaintiff] in the office."  Id. at 76:17-18.

Plaintiff testified that she had no reason to believe that any of Anderson's conduct toward her, other than her compensation change, was because of her gender.  Id. at 77:14-18 ("Q.  Do you believe any of [Anderson's] other conduct toward you was based on because you were a

woman or just the compensation?"  A.  I don't know.  But I would say the compensation.");

See Def.'s Statement of Uncontested Facts ¶ 43; Pl.'s Ans. to Def.'s Statement of Uncontested

Facts ¶ 43.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the burden of demonstrating that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the

nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

A fact is "material" if it might affect the outcome of the case under governing law.  Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits
> or declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials;
> or
>
> (B) show[ ] that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in

its favor" in order to overcome a summary judgment motion and cannot survive by relying on

unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

DISCUSSION

Defendant argues that it is entitled to summary judgment for two reasons. First, because plaintiff was merely an independent contractor, not an "employee," and thus the provisions of Title VII were inapplicable to her. Second, because plaintiff has not produced evidence from which a reasonable jury could conclude that she suffered intentional discrimination or a hostile work environment.[2] Additionally, defendant argues that it is entitled to judgment on plaintiff's punitive damages claim because plaintiff has not produced sufficient evidence to support such a claim.

Plaintiff, in her opposition brief, has not responded to defendant's arguments with respect to the hostile work environment claim or to the punitive damages claim.[3] Additionally, despite Rule 56(c)'s clear instruction that "a party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," plaintiff has neither

_____

[2]    By Order dated July 15, 2010, I dismissed plaintiff's retaliation claim with leave to amend. Plaintiff did not subsequently amend her complaint.

[3]    Plaintiff only mentions Anderson's "unfair critic[ism of] her work performance" as context for her disparate treatment claim. See Pl.'s Br. at 4-5.

produced any evidence nor cited any materials in the record in support of her position.

Nevertheless, in accord with Local Rule of Civil Procedure 7.1, I will review the record and

decide the motion on its merits.  See Smith v. Zeeky Corp., No. 09-4253, 2010 WL 1878716, at

*5 (E.D. Pa. May 7, 2010).

I.      Plaintiff's Employment Status

        Defendant first argues that plaintiff was an independent contractor, not an employee, of

defendant and therefore that she is not entitled to the protections of Title VII.  See Brown v. J.

Kaz, Inc., 581 F.3d 175, 179-81 (3d Cir. 2009).  Defendant's argument is based primarily on the

fact that after plaintiff's compensation structure was changed to commission only, she was not

entitled to benefits and was allowed ample latitude to pursue her own leads, schedule her own

appointments and work outside of the office.  Def.'s Br. at 32.  Defendant does not, however,

dispute that plaintiff was an employee for the purposes of Title VII prior to the change in her

compensation structure.  Id. at 30.

        I find that plaintiff's precise employment status after the change in her compensation

structure is irrelevant to this analysis because plaintiff alleges that the change was itself

motivated by gender based discrimination.  Title VII clearly protects an employee from being

demoted to an independent contractor for discriminatory reasons.[4]  I will accordingly deny

---

[4]      Plaintiff alleges that during the time period between her demotion and her
resignation, defendant directed gender-motivated hostility toward her on one occasion.  Pl.'s
Dep. 76:19-77:9 (Nov. 17, 2010).  In a sales meeting during that time period, Anderson asked all
the sales executives in the room what they were working on.  When plaintiff described what
leads she was pursuing, defendant responded "that's not going to happen."  Id.  For the reasons
described more fully below, I find that Anderson's behavior was not severe or pervasive enough
to constitute a hostile work environment.  In light of this holding, plaintiff's employment status
following her demotion is irrelevant.

defendant's motion for summary judgment on this ground.

II.     Plaintiff Has Not Presented Evidence of a Hostile Work Environment

Plaintiff claims that Anderson's treatment of her created a hostile work environment.[5]

She testified that, on occasion, Anderson would abruptly turn his back to her in the middle of a

conversation and walk away.  Pl.'s Dep. 39:1-24 (Nov. 17, 2010).  She also testified that in the

sales meetings she attended Anderson would ask each account executive in the room to describe

what he or she was working on.  When it was plaintiff's turn to speak, Anderson would criticize

her performance or occasionally skip her altogether.  Id. at 45:13-48:6.  This behavior occurred at

each of the approximately five sales meetings she attended during the time Anderson was general

manager.  See Def.'s Statement of Uncontested Facts ¶ 33; Pl.'s Ans. to Def.'s Statement of

Uncontested Facts ¶ 33.  On another occasion, plaintiff requested her sales numbers from

Anderson three times during a two-week period and he stated that he did not have time to meet

with her.  Pl.'s Dep. at 54:15-18.

Title VII prohibits the establishment of a work environment that is hostile to members of

a protected class.  See Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)

(applying hostile work environment analysis to allegations of sexual harassment).  In order to

state a claim for hostile work environment, plaintiff must show: (1) she suffered intentional

discrimination because of her gender; (2) the discrimination was severe or pervasive;[6] (3) the

_____

[5]     I reiterate that plaintiff has not presented any argument or evidence in opposition
to defendant's motion for summary judgment on the hostile work environment claim.

[6]     Until 2006, the Court of Appeals required that discrimination be "pervasive and
regular."  See, e.g., Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).  In 2006, however,
the Court of Appeals altered its formulation of the standard to conform to Supreme Court
precedent.  See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006) (citing Pa. State Police v.

discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) the existence of respondeat superior liability.  See Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276-77 (3d Cir. 2001).

For two reasons, the evidence in the record does not support plaintiff's hostile work environment claim.  First, plaintiff admits that she has no reason to believe that Anderson's alleged hostility was directed at her because of her gender.  See Def.'s Statement of Uncontested Facts ¶ 43 ("[Plaintiff] does not have any reason to believe [Anderson] undertook these actions based in any way on [plaintiff's] gender."); Pl.'s Ans. to Def.'s Statement of Uncontested Facts ¶ 43 ("Admitted.").  My review of the record reveals no evidence upon which a reasonable jury could conclude that Anderson was hostile to plaintiff because of her gender.  Indeed, it is clear from the evidence that Anderson's hostility resulted from his disagreement with plaintiff over the best way to sell advertising; plaintiff continued to target national clients–a plan which Anderson expected ultimately to be unsuccessful.  See Def.'s Statement of Uncontested Facts ¶¶ 36-39; Pl.'s Ans. To Def.'s Statement of Uncontested Facts ¶¶ 36-39.  Absent evidence that Anderson's allegedly discriminatory treatment of plaintiff was motivated by gender-based animus, defendant is entitled to judgment on plaintiff's hostile work environment claim.  See Stoltz v. Cnty. of Lancaster, No. 08-5622, 2011 WL 815709, at *13 (E.D. Pa. Mar. 7, 2011), citing Carver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005).

Defendant is entitled to judgment on plaintiff's hostile work environment claim for a

---

Suders, 542 U.S. 129, 133 (2004)).  The standard I apply here–"severe or pervasive"–comes from Jensen.

second reason: the evidence in the record does not establish that Anderson's treatment of plaintiff was severe or pervasive.  In evaluating a claim of hostile work environment, I am mindful of the Supreme Court's cautionary instruction that Title VII is not designed to be a "general civility code."  Faragher v. Boca Raton, 524 U.S. 775, 788 (1998), quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).  Accordingly, "offhanded comments and isolated incidents" are insufficient to sustain a hostile work environment claim.  See Carver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005).  "Rather, the conduct must be extreme [enough] to amount to a change in the terms and conditions of employment."  Id. (internal citations omitted). In determining whether the conduct is sufficiently severe or pervasive to implicate Title VII, district courts must consider the totality of the circumstances.  See id., citing Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).  Such considerations "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 263, citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Here, plaintiff has described conduct on the part of Anderson that was rude and likely caused her some discomfort.  However, such conduct, although unprofessional, is not severe enough to amount to a Title VII violation.  Anderson's remarks and actions were not accompanied by threats of physical violence and they did not result in any significant embarrassment.  Additionally, Anderson's unprofessional treatment of plaintiff happened relatively infrequently.  It was limited to several discrete instances over the course of the approximately two and one half months that plaintiff and Anderson worked together.  This treatment simply was not severe enough to constitute a change in the "terms and conditions of

[plaintiff's employment]." <u>Carver</u>, 420 F.3d at 262.  Indeed, plaintiff did not find it necessary to complain about Anderson's conduct until he changed her compensation structure.  Pl.'s Dep. 64:1-6.  Accordingly, defendant is entitled to judgment on plaintiff's hostile work environment claim.

III.    Plaintiff Has Not Produced Evidence Establishing That She Was Subjected To Disparate Treatment

Plaintiff also claims that she was subject to unlawful disparate treatment in that she was paid less than a male who held the same job.  28 U.S.C. § 2000e-2(a)(1) makes it unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  The Court of Appeals has held that a plaintiff invoking section 2000e-2(a)(1) may prove her case under either the pretext theory, set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), or the mixed-motive theory, originally set forth in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), and subsequently amended by statute.  <u>See</u> <u>Makky v. Chertoff</u>, 541 F.3d 205, 213 (3d Cir. 2008).  Although plaintiff may pursue her case under both theories, <u>see</u> <u>Armbruster v. Unisys Corp.</u>, 32 F.3d 768, 781 n.17 (3d Cir. 1994) (<u>overruled on other grounds</u> <u>Smith v. Wilkinsburg</u>, 147 F.3d 272, 277-78 (3d Cir. 1998), here she has pursued only a pretext theory in response to the motion for summary judgment.  Pl.'s Br. at 5.  In reviewing the facts of this case, I am mindful that my task is not to second guess an employment decision; rather, I must determine whether the employment decision was motivated by illegal discriminatory purpose. <u>See</u> <u>Waris v. Heartland Home Healthcare Servs., Inc.</u>, No. 09-1904, 2010 WL 538054, at *2 (3d

Cir. Feb. 17, 2010).

Proof of discrimination under a pretext theory involves a burden shifting analysis. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). First, plaintiff must establish a prima facie case of discrimination: "(1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of the [adverse employment action] give rise to an inference of discrimination." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003). If plaintiff is able to establish a prima facie case, an inference of discriminatory motive arises and the burden of production shifts to defendant to put forth a legitimate non-discriminatory reason for its actions. See id. at 319. This is a relatively light burden which "can [be] satisf[ied] . . . 'by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994), quoting St. Mary's Honor Ctr. v. Hicks, 508 U.S. 502, 509 (1993). Defendant need not establish that the proffered reason actually motivated its decision but only that it may have. Id. Finally, if defendant is able to put forth a legitimate non-discriminatory reason for its actions, plaintiff must demonstrate that the proffered reason is pretextual. See id. For the plaintiff to succeed under a pretext theory, she must prove that the impermissible factor was the determinative factor in the adverse employment action. See Watson v. Southeastern Pa. Transp. Auth., 207 F.3d 207, 215 (3d Cir. 2000). This standard is referred to in other contexts as "but for causation." See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 n.8 (3d Cir. 2007).

A.     Plaintiff Has Not Produced Evidence Establishing a Prima Facie Case of
       Employment Discrimination

Here, plaintiff has met her burden to establish the first three elements of the prima facie

case of employment discrimination.  As a woman, she is a member of a protected class.

Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir.

2006) ("Scheidemantle meets the first prong because, as a woman, she is a member of a

protected class--"sex" under Title VII.").  There is no dispute that she was qualified to be an

account executive and that she suffered an adverse employment action.[7]

The parties disagree, however, over whether there is sufficient evidence in the record to

show that similarly situated males were treated differently than plaintiff, an issue upon which

plaintiff bears the burden.  Moussa v. Pa. Dept. of Pub. Welfare, No. 07-9, 2010 WL 1333333, at

*10 (W.D. Pa. Mar. 31, 2010); Nguyen v. AK Steel Corp., 735 F. Supp. 2d 346, 362 (W.D. Pa.

2010).  "In order for employees to be deemed similarly situated, [courts have held] that the

individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the

same supervisor, have been subject to the same standards and have engaged in the same conduct

---

[7]      An adverse employment action is "an action by an employer that is 'serious and
tangible enough to alter an employee's compensation, terms, conditions, or privileges of
employment.'"  Storey v. Burns Intern. Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004),
quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).  Plaintiff alleges two adverse
employment actions : (1) the reduction in her compensation from salary plus commission to
commission only; and (2) her demotion from salaried employee to commission only.  See Pl.'s
Br. at 6 ("Defendant effectively has conceded with respect to both the change in her status to a
commission-only salesperson and the different commission rate it paid to her as compared to
Bazemore that [plaintiff] has established the first three elements of a prima facie case of sex
discrimination.").  Plaintiff does not explain how these amount to two different adverse
employment actions.  In my view, they are simply two different characterizations of the same
adverse employment action–plaintiff's change in compensation structure from salary plus
commission to commission only.

without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Hodczak v. Latrobe Specialty Steel Co., — F. Supp. 2d —, 2010 WL 5463388, at *5 (W.D. Pa. Dec. 29, 2010), quoting Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002). "Whether alleged comparators are indeed similarly situated is a case-specific analysis, and one which is appropriate for the district court to evaluate at the summary judgment stage." Moussa, 2010 WL 1333333, at *10, citing Maull v. Div. of State Police, 39 Fed. App'x 769, 773 (3d Cir. 2002).

As evidence that defendant treated similarly situated males differently, plaintiff has identified Antonio Bazemore as a male employee who received a variable commission rate of up to twenty percent–double that of plaintiff. There are facial similarities between plaintiff and Bazemore. They both held the same position–account executive–and both had their compensation structure changed from salary plus commission to commission only.

Defendant argues, however, that critical differences between the two employees preclude a finding that they are comparators. First, when plaintiff's compensation structure was changed to commission only, Bazemore's work performance was better than plaintiff's. Second, plaintiff's compensation structure was implemented by Kernie Anderson, while Bazemore's was implemented by Kernie Anderson's predecessor, Cody Anderson. Third, when Cody Anderson agreed to pay Bazemore a variable commission rate between ten percent and twenty percent, the radio station was not under the same pressure to cut costs and improve its profitability as when Kernie Anderson changed plaintiff's compensation to a ten percent commission rate. Finally, defendant points out that Bazemore was an outlier insofar as his commission rate was greater than ten percent; everyone else on the sales team was receiving a commission of ten percent.

I agree with defendant that Bazemore is not an appropriate comparator. First, plaintiff has not produced any evidence that Bazemore's quality of work was comparable to plaintiff's quality of work.[8] Therefore, a reasonable jury could not conclude that plaintiff and Bazemore "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Hodczak v. Latrobe Specialty Steel Co., 2010 WL 5463388, at *5.

The Court of Appeals addressed a similar question in Hutchins v. United Parcel Serv., Inc., 197 F. App'x 152, 160-61 (3d Cir. 2006). There, the plaintiff, an African American male, alleged that the defendant had violated 42 U.S.C. § 1981 by paying him less than a similarly situated white male.[9] The District Court held that the plaintiff had not established a prima facie case of race discrimination because he had not shown any evidence that his work performance was substantially equal to that of the higher-paid white employee. Id. at 160. The plaintiff had relied exclusively on testimony that his proposed comparators were all "[g]rade 16 managers like [the plaintiff]" and that "[the defendant] has never contested that [the plaintiff] performed substantially the same work as his four comparators, the other Grade 16 Managers who reported to Valley." Id. The Court held that these statements were insufficient to show that the quality of the plaintiff's work was comparable to the quality of the work of his proposed comparators. Id. at 162.

---

[8] I do not go so far as to conclude, as defendant suggests, that Bazemore's performance was better than plaintiff's during the relevant time period. There simply is no evidence in the record from which to assess Bazemore's job performance.

[9] Claims under section 1981 are analyzed under the McDonnell Douglas burden shifting framework--the same framework that applies to this case. See Hutchins, 197 F. App'x at 160.

This case is analogous to Hutchins.  It is not enough for plaintiff simply to assert that she shared a title with Bazemore; she must show that her performance, background and work history were comparable enough to Bazemore's so as to raise an inference of discrimination if the two employees are treated differently.  Hutchins, 197 F. App'x at 160-61; see also Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087 (3d Cir. 1996) (indicating, in the context of a section 1981 claim, that "job grade levels" are not alone sufficient to demonstrate that two individuals are similarly situated).  Plaintiff has not produced any evidence that Bazemore's sales record is similar to plaintiff's or that Bazemore's work history and credentials are similar to plaintiff's.  To the contrary, the record indicates at least one significant difference between the backgrounds of the two.  Bazemore's employment application indicates that he holds a bachelor's degree from Hampton University.  See Antonio Bazemore, employment application at 3 (Aug. 21, 2006) (Def.'s Ex. I).  Plaintiff admits she does not have a bachelor's degree.  Pl.'s Dep. 94:1-6.  This difference is significant according to defendant's employee handbook, which states: "[s]alaries and hourly pay rates are competitive with the marketplace and are determined by such factors as: the type of position, educational background, work experience, and any other relevant factors."  See Levas Comms., LLC Emp. Handbook Personnel Policies at 18 (May 2007) (Def.'s Ex. C).

Additionally, Bazemore is not similarly situated to plaintiff with respect to compensation because his compensation structure was imposed by Cody Anderson, see Antonio Bazemore, Personnel Action Form (May 4, 2007) (Def.'s Ex. J), while plaintiff's compensation structure was imposed by Kernie Anderson.  See Plaintiff's Personnel Action Form (Oct. 14, 2007) (Def.'s Ex. N).  As noted by the Court of Appeals for the Seventh Circuit, "[d]ifferent employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently

comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000). This principle is especially applicable here, where the operational philosophy of the radio station changed abruptly when Cody Anderson was replaced by Kernie Anderson, who was under orders by the station's ownership to cut operational losses and increase revenue. See Def.'s Statement of Uncontested Facts ¶ 28; Pl.'s Ans. to Def.'s Statement of Uncontested Facts ¶ 28; see also K. Anderson Dep. 22:1-8 ("Q. Why did you, knowing [that Bazemore received a commission rate of between ten percent and twenty percent], not raise Ms. Wynn-Mason's percentage to fifteen or twenty percent? A. I was not there when Mr. Bazemore had gotten those – has gotten the commissions other than ten percent. It might well have been that those commissions were based on certain sales goals, certain sales incentives, etc."). The fact that the compensation decisions at issue in this case were made by different managers, who were operating under different financial constraints, precludes plaintiff and Bazemore from being comparators.

Apparently anticipating this problem, plaintiff also argues that Bazemore is a relevant comparator because Anderson imposed a ten percent commission rate upon plaintiff while allowing Bazemore's to remain at between ten percent and twenty percent. Plaintiff and Bazemore are not comparators from this perspective either. In October 2007, when plaintiff's compensation structure was changed, Bazemore was already paid on a commission only basis. Therefore, from Anderson's perspective, Bazemore was not costing the radio station anything. K. Anderson Dep. 30:5-15. If he did not perform well, he did not get paid. On the other hand, plaintiff was making an annual salary of $36,000 plus a ten percent commission, which was

substantially more than what any other members of the sales staff were paid. See Def.'s

Statement of Uncontested Facts ¶ 19; Pl.'s Ans. to Def.'s Statement of Uncontested Facts ¶ 19.

Unlike Bazemore, plaintiff had to be paid–and thus represented a cost to the station–whether she

produced revenue or not. Bazemore, therefore, was not similarly situated to plaintiff in October

2007.

Even assuming plaintiff and Bazemore were similarly situated in some relevant way,

defendant's treatment of Bazemore, by itself, still does not raise an inference of discrimination.

The Court of Appeals has cautioned that "the mere favorable treatment of one [member of a non-

protected class] as compared to one [member of a protected class] may not be sufficient to infer

. . . discrimination." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir.

1998). Such evidence, while possibly relevant, "cannot be viewed in a vacuum." Id. In other

words, plaintiff is not entitled to "selectively choose a comparator." Id. In coming to this

conclusion, the Simpson Court found instructive a decision by the Court of Appeals for the

Seventh Circuit which held that "just as an employer cannot insulate itself from claims of racial

discrimination by identifying a token black person whom it treated with abnormal leniency, a

black plaintiff cannot establish racial discrimination by singling out one white person who was

treated more favorably when there were other white persons who were treated less favorably than

other black persons." Simpson, 142 F.3d at 646, citing Bush v. Commonwealth Edison Co., 990

F.2d 928, 931 (7th Cir. 1993).

In this case, plaintiff has singled out the only individual who received a commission

greater than ten percent. Indeed, the parties agree that as of June 2007 "commissions for all

regular full-time and part-time employees engaged in sales were paid at a uniform rate of ten

percent on net collections."  <u>See</u> Def.'s Statement of Uncontested Facts ¶ 24; Pl.'s Ans. to Def.'s

Statement of Uncontested Facts ¶ 24.  The plaintiff cannot "'pick out one comparator who was

not demoted amid a sea of persons treated the same as her' to establish a jury question."

<u>Simpson</u>, 142 F.3d at 646.

Plaintiff has not established that Bazemore is an appropriate comparator.  Nor has she

offered any additional evidence to show "that the circumstances of the [adverse employment

action] give rise to an inference of discrimination."  <u>Sarullo</u>, 352 F.3d at 797-98.  Accordingly,

plaintiff has not produced sufficient evidence make out a prima facie case of employment

discrimination.

B.      Defendant Has Offered a Legitimate Non-disciminatory Reason for Plaintiff's
        Adverse Employment Action

Even assuming that plaintiff has satisfied her burden of setting forth a prima facie case,

defendant has satisfied its burden to show a legitimate non-discriminatory reason for plaintiff's

reduction in compensation.  Anderson testified that plaintiff was being paid twice as much as any

other account executive and that, despite her relatively lucrative contract, she was performing

poorly with respect to generating sales.  K. Anderson's Dep. 8:11-14 ("Her sales were poor and I

could not continue to pay her the salary that she'd been paid . . . .").  He further testified that the

ten percent commission rate that plaintiff received was standard.  <u>Id.</u> at 21:17-19 ("That's what

everybody was getting, 10 percent.").  Unsatisfactory job performance on the part of plaintiff

constitutes a legitimate non-discriminatory reason for the adverse employment action.  <u>Brewer v.</u>

<u>Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 330 (3d Cir. 1995); <u>Michniewicz v. Metasource,</u>

<u>LLC</u>, — F. Supp. 2d —, 2010 WL 4703540, at *9 n.11 (E.D. Pa. Nov. 19, 2010), <u>citing</u> <u>Marione</u>

v. MetLife Ins. Co., 188 F. App'x 141, 144 (3d Cir. 2006).

      C.      Plaintiff Has Not Shown Evidence of Pretext

Having set forth a legitimate non-discriminatory reason for the adverse employment action, the burden of production returns to plaintiff to show that the legitimate non-discriminatory reason proffered by defendant is merely pretext for gender-based discrimination. "To defeat a summary judgment motion based on a defendant's proffer of nondiscriminatory reasons, a plaintiff who has made a prima facie showing of discrimination need point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Brewer, 72 F.3d at 330, citing Fuentes v. Perskie, 32 F.3d 759, 763-64 (3d Cir. 1994). "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'" Id. at 331, quoting Fuentes, 32 F.3d at 765. "Rather, the nonmoving plaintiff must demonstrate such 'weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.'" Id., citing Fuentes, 32 F.3d at 765.

Plaintiff has not produced evidence indicating that defendant's proffered legitimate non-discriminatory reason for its compensation decision was pretext. In her response brief, she simply states in a footnote that she "relies on the same evidence to establish the fourth prong of a

prima facie case to demonstrate that Defendant's legitimate, non-discriminatory reasons for [the adverse employment actions] are pretextual." Pl.'s Br. at 9 n.1.  I have already explained why plaintiff's proposed comparator evidence does not raise an inference of discrimination.  For the same reasons, it cannot raise an inference that defendant's legitimate non-discriminatory reason was pretext.  See Manley v. Abbott Labs., No. 09-0096, 2010 WL 3394717, at *8 n.10 (W.D. Pa. Aug. 26, 2010); Solomon v. Phila. Newspapers, Inc., No. 05-05326, 2008 WL 2221856, at *19 (E.D. Pa. May 21, 2008).  Accordingly, defendant is entitled to judgment on plaintiff's disparate treatment claim.

CONCLUSION

Because plaintiff has not produced sufficient evidence to make out claims of hostile work environment or disparate treatment, I will grant defendant's motion for summary judgment in its entirety.[10]

An appropriate Order follows

_____

[10] I will deny as moot defendant's motion for judgment on the punitive damages claim.